# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| BETTY GOLEMON, | : | |
| Plaintiff, | : | |
| vs. | : | CA 14-0058-C |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 14 & 16 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel for the parties at the August 27, 2014 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 14 & 16 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of
(Continued)

Plaintiff alleges disability due to psoriasis, myalgias with degenerative disc disease, cervical radiculopathy, carpal tunnel syndrome, headaches, anxiety, depression, vertigo, hypertension, asthma, obesity, and bilateral degenerative joint disease of the knees. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.    The claimant has not engaged in substantial gainful activity since January 4, 2011, the application date (20 CFR 416.971 *et seq*.).**
>
> **2.    The claimant has the following severe impairments: myalgias with degenerative disc disease, cervical radiculopathy, carpal tunnel syndrome, headaches, anxiety, depression, vertigo, hypertension, asthma, obesity, and bilateral degenerative joint disease of the knees (20 CFR 416.920(c)).**
>
> .   .   .
>
> Following the alleged onset date of June 10, 2007, through calendar year 2008, the record documented periodic visits to the Mostellar Medical Center, for a variety of complaints including indigestion, back and knee pain, burning on urination, rectal bleeding, psoriasis, and cold symptoms. . . . It is noted that when seen for follow up of her psoriasis, the claimant's extremities were described as normal (Exhibits 1F and 7F).
>
> The medical records through 2008 noted treatment of the claimant for various complaints but did not describe ongoing treatment for a specific illness or impairment over 12 consecutive months. The record, rather, described sporadic treatment for numerous complaints and specific testing was not supportive of a disabling impairment. . . . The claimant was [] seen, at different times, for . . . psoriasis . . . .
>
> .   .   .
>
> The claimant applied for benefits in January 2011. The medical evidence for the calendar year 2010, a full year prior to her filing for benefits, includes continuing reports from the Mostellar Medical Center. The notes from early 2010 show periodic treatment for various complaints including

---

Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.'"))

. . . psoriasis of the elbows and knees. . . . In May 2010, she reported right pelvic pain and in September 2010, she reported having back and knee pain. At that time, psoriasis was not indicated as a diagnosis but a hiatal hernia was indicated.

. . .

For 2011, the record shows that the claimant was seen at the Mostellar Medical Center for right knee pain, following a fall, and for psoriasis of her left hand and foot, and right knee. . . . In September and in October 2011, the claimant was treated for cold symptoms, asthma, and psoriasis.

. . .

In February 2012, the Mostellar Medical Center noted that the claimant had multiple complaints and recommended that she be seen by Dr. Lawrence for her psoriasis.

. . .

The above-described combined severe impairments are supported by the claimant's medical history, and those impairments in combination restrict the claimant's ability to perform a full range of work-related activities and they are severe within the meaning of the Social Security Act and Regulations.

**3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

The record does not document the specific requirements described in any section of Appendix 1. There is no history of signs, symptoms and findings so similar to any impairment listed in Appendix 1 that establishes a medically equivalent degree of severity. Counsel argued that the claimant's psoriasis met the requirements of Appendix 1. Section 8.05 of Appendix 1 refers to psoriasis, and requires that there be extensive skin lesions that persist for three month[s] despite continuing treatment as prescribed. In this case, the record notes treatment for flares of psoriasis for several years. Those reports, which note periodic flare up (sic) of psoriasis, do not describe extensive skin lesions over any three month period of time.

. . .

**4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she must alternate positions between sitting and standing every 30 minutes but she would not have**

**to leave the work station. She cannot perform overhead reaching or operate foot controls. She cannot climb ladders, scaffolds, or ropes. She cannot kneel, crawl, or work at unprotected heights or around dangerous equipment. She cannot work in areas of temperature extremes, wetness, or be exposed to concentrated environmental pollutants. She can occasionally climb ramps and stairs, bend, stoop, and crouch. She can frequently reach, other than overhead, and frequently handle and finger.** . . .

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant testified that her vertigo made her have to move slowly or she would fall out. Her musculoskeletal problems caused shooting pain and made her feel numb and heavy, and want to sleep. Her psoriasis made her fingers break open and made her feel she had carpet burns over her body. . . . The claimant testified that she could walk for only 150 feet, stand for only three minutes, and sit for only five minutes. She alleged that her psoriasis and arthritis caused her to feel stiff and to hurt, and caused her to drop items.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's alleged disabling impairments, the record shows that claimant has a wide range of daily activities, including caring for her disabled husband and a child with cerebral palsy. She described performing a range of household activities, including washing dishes, and doing other chores with help from her children and others. She went shopping, and did the banking and bill paying for the family. She took care of her Chihuahua. She also would attend school events with her daughter. She was taking on-line college classes on her computer. The range of activities described by the claimant is consistent with the established residual functional capacity. The claimant testified that her pain medications interfered with her vertigo. None of the medical reports described her reporting any adverse medication effects to her treating sources. The claimant described an inability to sit, stand, or walk for more than minimal amounts of time because of her impairments. Her history of treatment, the test reports of record, and her daily activities do not support such limitations. The medical evidence, which documents treatment of the claimant over several years, does not establish a specific history with respect to the location, duration, frequency, or intensity of symptoms. The record documents a history of sporadic treatment for various complaints but does not establish a consistent history of symptoms. The claimant indicated that minimal sitting, standing, or walking exacerbated her symptoms. The medical evidence does not support her allegations. The claimant has been prescribed appropriate medications for her illnesses, and the record does not describe allegations of adverse medication effects. The claimant has had a successful esophageal dilation procedure, but otherwise she has been treated conservatively for all of her illnesses and injuries. She testified that a referral to a dermatologist has been suggested, but such referral had not been made as of the date of the hearing. The claimant's allegations of disability are not supported by her history of treatment, by any test findings o[f] record, by the opinion of any treating source, or by her daily activities. Her allegations of disability are not credible.

. . .

**5.      The claimant is unable to perform any past relevant work (20 CFR 416.965).**

. . .

**6.      The claimant was born on October 21, 1968 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).**

**7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).**

**8.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a**

> **framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**
>
> **9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).**
>
> . . .
>
> **10. The claimant has not been under a disability, as defined in the Social Security Act, since January 4, 2011, the date the application was filed (20 CFR 416.920(g)).**

(Tr. 16, 16-17, 17, 18, 18-19, 20-21, 21, 22 & 23 (internal citations omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 4-6) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

A claimant is entitled to an award of supplemental security income benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.905(a) (2014). In determining whether a claimant has met her burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(b). At the second step, if a claimant does not have an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities (that is, a severe impairment), she is not disabled. 20 C.F.R. § 416.920(c). At step three, if a claimant proves that her impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education and work

experience. 20 C.F.R. § 416.920(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, she must prove that her physical and/or mental impairments prevent her from performing her past relevant work. 20 C.F.R. § 416.920(f). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 416.920(g). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[2] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 (11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'").[3]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she is capable of performing those

---

[2] *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

7

light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-59 (11th Cir. 2004).

The plaintiff contends that the ALJ erred in making no finding regarding whether her psoriasis is a severe impairment and also erred in failing to find that her psoriasis meets Listing 8.05. (*See* Doc. 11.) With respect to plaintiff's first assignment of error, the defendant argues in response that the ALJ implicitly found that plaintiff's psoriasis was not a severe impairment and that even if she should have found psoriasis to be a severe impairment, such failure was harmless error because the finding by the ALJ that she had other severe impairments is all step two requires, and she expressly considered plaintiff's psoriasis in assessing residual functional capacity. (Doc. 12, at 6.) Because the undersigned finds that the ALJ committed reversible error respecting her

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

8

analysis of plaintiff's psoriasis, and the impact that this impairment has upon the Golemon's ability to perform basic work activities, the Court does not reach the issue of whether plaintiff's psoriasis meets Listing 8.05.

The Commissioner's severity regulation requires the claimant to make a threshold showing that she has an impairment which significantly limits her physical or mental ability to perform basic work activities. 20 C.F.R. § 416.921(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987); *see also Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) ("At the second step, [the claimant] must prove that she has a severe impairment or combination of impairments."), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000). In other words, "an impairment is 'severe' if it 'significantly limits claimant's physical or mental ability to do basic work activities.'" *Salazar v. Commissioner of Social Security*, 372 Fed.Appx. 64, 66 (11th Cir. Apr. 6, 2010), quoting *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Basic work activities include functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling. 20 C.F.R. § 416.921(b). An impairment can be considered not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see Yuckert, supra,* 482 U.S. at 153, 107 S.Ct. at 2297 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight

that it is unlikely they would be found disabled even if their age, education and experience were taken into account.").[5]

> Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in SGA [substantial gainful activity] is not seriously affected. Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities must be made. A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself.

SSR 85-28. The claimant's burden at step two of the sequential evaluation process is mild. *Daniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."). A claimant need only show that "her impairment is not so slight and its effect is not so minimal." *Id.*; *see also Salazar, supra,* at 66 ("Although the claimant bears the burden of showing severity, the burden is mild, such that a claimant need only show 'her impairment is not so slight and its effect is not so minimal' as to be trivial.").

By her own admission, the Commissioner in this cases concedes that the ALJ implicitly found that plaintiff's psoriasis was not a severe impairment (*see* Doc. 12, at 6), presumably by virtue of the fact that "psoriasis" does not appear in the "list" of severe impairments specifically found by the ALJ (*compare id. with* Tr. 16). The Commissioner then proceeds to half-heartedly argue that the ALJ correctly determined that plaintiff's psoriasis was non-severe (*see* Doc. 12, at 5-6), only to quickly do an about-face and argue that even if the ALJ should have found psoriasis to be a severe impairment, such

---

[5] It is clear that in *Yuckert,* the Supreme Court did not impose a standard higher than the *de minimis* standard set out in *Brady. See Stratton v. Bowen,* 827 F.2d 1447, 1451 n.7, 1452 n.9, 1452-1453 (11th Cir. 1987).

failure was harmless error because the finding by the ALJ that she had other severe impairments is all step two requires (*id.* at 6, citing *Heatly v. Commissioner of Social Security,* 382 Fed.Appx. 823, 824-825 (11th Cir. Jun. 11, 2010)). Presumably, the Commissioner's about-face has several sources. First, psoriasis, not surprisingly, is often recognized as a severe impairment. *See, e.g., Wines v. Astrue,* 2012 WL 684847, *1 (M.D. Ala. Mar. 2, 2012) (noting ALJ concluded that plaintiff had numerous severe impairments, including psoriasis); *Cannon v. Astrue,* 2011 WL 4346566, *2 (M.D. Fla. Sept. 16, 2011) ("At step two, the ALJ found Plaintiff's disorders of the spine, **psoriasis**, affective disorder, and obesity were severe impairments[.]" (emphasis supplied)). Second, any implicit finding of non-severity in this regard is inherently inconsistent with the ALJ's specific analysis of Golemon's psoriasis at step three—the Listing of Impairments (here, specifically Listing 8.05)—since analysis at step three assumes severity of the relevant impairment. *Compare Salazar, supra,* 372 Fed.Appx. at 66 ("[T]he ALJ must decide whether the claimant's severe impairment meets or medically equals a listed impairment.") *with Kuhl v. Commissioner of Social Security,* 451 Fed.Appx. 802, 804 (11th Cir. Oct. 14, 2011) ("Under the five-step sequential evaluation used to determine whether a claimant is disabled, the ALJ considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) *if so, whether the severe impairment* meets or equals an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's age, education and work experience, the claimant can perform other work that exists in significant numbers in the national economy." (emphasis supplied)). Finally, since the record in this case is replete with psoriasis evidence (*compare* Tr. 204, 215, 219-220, 243-244, 250-251, 276-278, 374-375, 377, 384, 389 *with* Tr. 81, 102-103, 106,

506, 510, 513, 521 & 524), and this Court is prohibited from reweighing the evidence and making a dispositive determination regarding the severity of plaintiff's psoriasis, *see Tobler v. Colvin*, 2014 WL 4187372, *6 (N.D. Ala. Aug. 20, 2014) ("Other than a somatoform disorder, the ALJ did not discuss to what degree any of the claimed impairments were to be considered severe, leading the court to believe that the ALJ determined that none of the claimed issues imposed any impairment. This court is not at liberty to re-weigh the evidence and determine which, if any, of the above impairments are severe, non-severe, or not impairments. However, because there are diagnoses and varying levels of treatment in the record for the claimed impairments, the ALJ must assign an impairment level to them, based on the evidence in the record."), the Commissioner attempts to avoid a remand by making a harmless error argument.

In *Heatly, supra*, a panel of the Eleventh Circuit certainly stated that "[e]ven if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment,[6] the error was harmless because the ALJ concluded that Heatly had a severe impairment[] and that finding is all that step two requires." 382 Fed.Appx. at 824-825 (footnote added). And while this Court could talk at some length about whether *Heatly* was correctly decided, it is clear that the case was not decided in a vacuum, the panel finding that the ALJ considered all of the claimant's impairments in combination given his detailed discussion of "Heatly's testimony and medical history, which included Heatly's pain complaints, his limitations due to pain, and the diagnoses he received related to his pain." *Id.* at 825 (citation omitted). In recognition that *Heatly* was not

---

[6] "[T]he ALJ determined that the only severe impairment Heatly suffered from was status-post cervical fusion[.]" *Id.* at 824.

12

decided in a vacuum, the Commissioner concludes her argument in the following manner: "In this case, not only did the ALJ find Plaintiff had severe impairments, but she expressly considered the allegedly severe impairment of psoriasis in assessing Plaintiff's RFC (Tr. 21)." (Doc. 12, at 6.) In this regard, however, the Commissioner is only partly correct inasmuch as the only mentions made of psoriasis in this pivotal portion of the ALJ's decision consist of the acknowledgements that Golemon stated "[h]er psoriasis made her fingers break open and made her feel she had carpet burns over her body[]" and "that her psoriasis and arthritis caused her to feel stiff and to hurt, and caused her to drop items." (Tr. 21.) However, the ALJ failed to evaluate these allegations, or more specific complaints made by Golemon during the hearing, "head-on" in analyzing the plaintiff's credibility. (*See id*.) For instance, even with respect to the plaintiff's complaints summarized in the decision—that her fingers break open and her psoriasis causes her to drop items (Tr. 21)—the ALJ failed to explicitly discredit such complaints or explain how such complaints[7] (or the more specific complaints Golemon made at the hearing which the ALJ chose to ignore[8]) are not inherently inconsistent with the RFC determination that the claimant retains the ability to frequently reach (other than overhead), handle, and finger. (*See id.*)

---

[7] The ALJ's failure to directly address these complaints perhaps stems from the fact that the ALJ actually witnessed the "busted" skin at the joints of several of Golemon's fingers on her left hand. (*See* Tr. 524 (plaintiff's testimony suggests that she is showing the ALJ and her attorney her left hand with the "busted" skin at her finger joints).)

[8] Plaintiff specifically testified that her fingers "bust open periodically just grabbing a cup of coffee[]" (Tr. 513), that she cannot take a bath without feeling like alcohol is being poured over an open wound (*id.*), and that she has to wear flip-flops because if she puts socks on they stick to her skin and pull her skin off when she takes the socks off her feet (Tr. 521).

The failure of the ALJ to specifically identify the limitations associated with plaintiff's psoriasis—or explain why this impairment lends itself to no limitations with respect to plaintiff's ability to perform basic work activities—is but a "sliver" of a much bigger problem with the ALJ's decision in this case and that is her failure to specifically link her physical residual functional capacity assessment to specific evidence in the record bearing upon Golemon's ability to perform the physical requirements of work. The ALJ in this case simply failed to "show [her] work[,]" that is, she failed to show *how* she applied and analyzed the evidence to determine plaintiff's physical RFC. *See, e.g., Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) (an ALJ's "decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (an ALJ must "explain the basis for his decision"); *Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) (an ALJ [must] "provide *enough reasoning* for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole" (emphasis added)). An ALJ's application and analysis of the evidence to show how she determined plaintiff's RFC quite naturally appears in conjunction with the fourth-step determination; however, no such application and analysis appears in this portion of the ALJ's decision in this case (Tr. 20-22). In addition, even in that portion of the decision in which some of evidence is mentioned (*see* Tr. 16-18), the ALJ certainly does not show how she applied and analyzed such evidence to determine plaintiff's physical RFC.[9] Accordingly, not only

---

[9] For instance, this Court is unable to tell what evidence of record led the ALJ to conclude that plaintiff: (1) "**must alternate positions between sitting and standing every 30 minutes[;]**" (2) "**cannot perform overhead reaching or operate foot controls[;]**" or, as aforesaid, (3) "**can frequently reach, other than overhead, and frequently handle and finger.**" (Tr. 20.)

14

was the ALJ's failure to consider limitations associated with plaintiff's psoriasis in the context of her RFC determination not harmless error but, as well, the ALJ's wholesale failure to "link" her RFC determination (in particular, her physical RFC determination) to evidence in the record bearing upon Golemon's ability to perform the physical requirements of work was clear reversible error.

Based upon the foregoing, this cause is due to be reversed and remanded for further proceedings not inconsistent with this decision.

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 5th day of September, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**